**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE TAIPEI DISTRICT COURT, TAIWAN, TO RESTRAIN ANY PROPERTY OWNED OR CONTROLLED BY STEVEN CHENG IN THE UNITED STATES UP TO $14,010,829.02, INCLUDING, BUT NOT LIMITED TO: | ) | 1:17-MC- ________ |
| ANY AND ALL FUNDS AND ASSETS IN ALL ACCOUNTS IN THE NAME OF STEVEN CHENG HELD AT JP MORGAN CHASE BANK, NEW YORK, NY | ) | |
| ANY AND ALL FUNDS AND ASSETS IN ALL ACCOUNTS IN THE NAME OF CFII TRUST HOLDING LLC HELD AT JP MORGAN CHASE BANK, NEW YORK, NY | ) | |
| ANY OR ALL INTEREST OWNED BY STEVEN CHENG IN CNG INVESTMENT LLC HELD AT JP MORGAN CHASE BANK, NEW YORK, NY | ) | |
| ANY OR ALL INTEREST IN REAL PROPERTY LOCATED AT 18 GRAMARCY PARK SOUTH UNIT 2, NEW YORK, NY | ) | |

**APPLICATION OF THE UNITED STATES**
**TO ENFORCE AND REGISTER FOREIGN RESTRAINING ORDER**
**PURSUANT TO 28 U.S.C. § 2467(d)(3)(A) AND 18 U.S.C. § 983(j)(1)(A)**

The United States of America, by and through its undersigned attorneys, respectfully submits this application for entry of an order pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18 U.S.C. § 983(j)(1)(A). The application seeks to enforce restraining orders which will expire if not enforced on or before April 5, 2017. The orders sought to be enforced were issued by a Taipei District Court, Taiwan, to restrain assets owned by Steven Cheng a/k/a Chuing-Zaa Cheng and Steven Chuing-Zaa Cheng including bank accounts and real properties in the United

States up to the amount of $14,010,829.02. The orders were entered on October 5 and 7, 2016 as part of a criminal prosecution in Taiwan against Steven Cheng a/k/a Chuing-Zaa Cheng and Steven Chuing-Zaa Cheng for violations of Taiwan's Security and Exchange Act, Financial Holding Company Act and Money Laundering Control Act. As set forth below, the Taiwan restraining orders have been certified for enforcement by the Assistant Attorney General of the U.S. Department of Justice's Criminal Division in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). The United States seeks expedited consideration of this application, because the Taiwan October 5 and 7, 2016 restraining order require execution on the assets owned or controlled by Steven Cheng a/k/a Chuing-Zaa Cheng and Steven Chuing-Zaa Cheng on or before April 5, 2017.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to 28 U.S.C. § 2467(c)(2)(B), which provides, in the relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which . . . the property that may be the basis for satisfaction of a judgment under this section may be found."

## II. APPLICATION

Based on a mutual legal assistance request from the government of Taiwan pursuant to the Treaty governing law enforcement cooperation between Taiwan and the United States,[1] the

[1] The United States and Taiwan are parties to a Mutual Legal Assistance Agreement that entered into force on March 26, 2002. See, *Agreement on Mutual Legal Assistance in Criminal Matters Between the American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the United States*, March 26, 2002. Under this Agreement, the United States has an obligation to assist Taiwan in forfeiture or confiscation related matters, including the restraint of criminal proceeds and instrumentalities of offenses. *Id.*, at Article 17. *See* additional discussion at fn. 7.

United States seeks a restraining order from this court pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18 U.S.C. § 981(j)(1) to preserve the assets owned by Steven Cheng a/k/a Chuing-Zaa Cheng and Steven Chuing-Zaa Cheng that will be subject to forfeiture in Taiwan. The United States, with the appropriate certification of the Assistant Attorney General attached as Exhibit A, applies to this Court to issue an order restraining the assets owned or controlled by Steven Cheng a/k/a Chuing-Zaa Cheng and Steven Chuing-Zaa Cheng in the United States up to the amount of $14,010,829.02.

## III. FACTUAL BACKGROUND

On October 5, 2016, the Special Investigations Division of Taiwan's Supreme Prosecutor's Office charged Chuing-Zaa Cheng (aka Steven Cheng, and Steven Chuing-Zaa Cheng) ("Cheng") with committing several criminal violations from May 2002 through March 2007, including violations of Taiwan's Security and Exchange Act, Financial Holding Company Act and Money Laundering Control Act. On October 5, the Taipei District Court issued a sealed criminal restraining order against assets representing the amount of the proceeds of Cheng's theft. On October 7, the Taipei District Court issued a supplemental sealed order stating that the October 5, 2016 restraining order can only be executed against Cheng's assets up to $14,010,829.02 USD in the United States because this is the amount they can show was transferred into his personal accounts unlawfully from the businesses he managed. The Taipei District Court's restraining order and supplemental order state that they should be enforced against all property of Chuing-Zaa Cheng or CNG Investment LLC ("CNG") up to the maximum, including but not limited to a list of specific bank accounts owned or controlled by Chuing-Zaa Cheng or CNG maintained at JP Morgan Chase in New York ("JPMC") as well as

real property located at 18 Gramercy Park South, New York which is held by CNG (the "Restraining Orders").

On or about December 12, 2016, Taiwan transmitted the Restraining Orders to the United States Department of Justice for execution pursuant to a Mutual Legal Assistance Agreement (the "MLAA") between the two jurisdictions. Taiwan has requested that the United States enforce the Restraining Orders so Cheng's U.S.-based assets will be available for forfeiture.

Cheng is a citizen of Taiwan and is currently a lawful resident of the United States. There is no extradition treaty with Taiwan. Cheng's U.S. drivers' licenses and passport provided to JPMC shows the name Steven Cheng Chun-Che, Chen Chun-Che, Steven Chuingzaa Cheng, Steven Chen, and Cheng Chuingzaa. The date of birth provided in the Taiwan orders matches the date of birth Cheng provided to JPMC.

As described below, the scheme involved both Cheng's brother-in- law, Jeffrey Koo, and his father- in-law, Lian Sung Koo, who looted publicly held companies and others they controlled. Lian Sung Koo died in December 2012 before he was charged, but Cheng's brother-in-law has been prosecuted and convicted.

Cheng and his brother-in-law and father-in-law controlled CTBC Financial Holding Co. Ltd ( "CTBC Holding"), headquartered in Taipei, Taiwan, which is a public company with its stock listed on the Taiwan Stock Exchange. CTBC Holding operated its business through a number of wholly-owned subsidiaries, including banks and CTBC AMC. From May 2002 to March 2007, Cheng held a number of executive positions at CTBC Holding and its subsidiaries. Cheng was 1) Deputy General Manager, Chief Financial Officer, and Chief Executive Officer for CTBC Holding's Corporate Banking Division; 2) General Manager at the CTBC Bank's Corporate Banking Division; 3) Chief of CTBC Bank's Financial Investment Division; 4)

Chairman of the Board for CTBC Asset Management Company ("CTBC AMC"); and 5) Chairman of the Board of CT Opportunity Investment Company ("CTO"), a subsidiary of CTBC. At all relevant times, his father in law, Liang Sung Koo, was Chairman of the Board of the CTBC Holding.

CTBC AMC was founded in May 2003, and managed a large portfolio of non-performing assets in which it invested.[2] In order to manage the non-performing loans and its related business, CTBC Holding invested a significant amount money in CTO, through CTBC AMC. CTO was incorporated in the Cayman Islands on May 5, 2003. In addition to being the board chairman of AMC and CTO, Cheng was the sole signatory for CTO's bank account maintained at CTBC's branch in Hong Kong Special Administrative Region, China.

The Taiwan investigation revealed that during the period 2004 through 2007, Cheng, his father in law and brother in law, and others, including executive officers of CTBC Holding, used their high-ranking positions at the company to embezzle millions of dollars from CTO accounts. Cheng and his coconspirators funneled these funds from CTO's accounts to offshore accounts held in the name of many shell corporations they caused to be created for their personal use and benefit. According to the Taiwan investigation, approximately $300 million was stolen from CTBC Holding, $14,010,829.02 of which was traced to Cheng's personal accounts.

Jeffrey Koo, Cheng's brother-in-law and Lian Sung Koo's son, was charged first in December 2009 with various offences in violations of the Taiwan Securities and Exchange Act and Banking Act Holding involving the same scheme engaged in by Cheng.[3] Jeffery Koo was

[2] The purpose of such investments is generally to buy loans at significant discounts of their stated value and try to profit from the sale of the collateral or repayment by the borrower.

[3] Taiwanese authorities have advised that they did not seek to charge Cheng before fall 2016 because they have no ability to extradite Cheng from the U.S. They will seek his arrest from other jurisdictions if he leaves the U.S. Moreover, until summer 2016, they had no legal authority to seek enforcement of a

convicted of embezzling $30,474,717.12 by the Taiwan High Court on May 31, 2013, and sentenced to nine years and 8 months imprisonment, with an additional criminal penalty in the amount of NTD 150 million (approximately $4,918,380). Certain employees have also been prosecuted and some have provided information detailing how the scheme worked.

Regarding Cheng specifically, Taiwan investigators uncovered evidence that from 1998 to 2006, he established a number of companies in the Cayman Islands and British Virgin Islands (BVI) that are believed to be shell companies. Most of these companies opened bank accounts at CTBC Bank's branch in Hong Kong. Cheng was the signatory for most of these accounts. For those accounts for which Cheng was not the signatory, the individuals having authority over the accounts were in fact nominees for Cheng and acted under Cheng's instruction for his benefit. From at least 2002 to 2007, Cheng conspired with others to use these offshore shell companies and bank accounts as vehicles to move funds from CTO's accounts in Hong Kong to these shell companies' accounts in the Cayman Islands and BVI. The funds were ultimately transferred into Cheng's personal accounts for his personal use.

For instance, on December 24, 2004, for the purported purpose of buying non-performing loans for CTO, CTBC Holding, through CTBC AMC, transferred $9,888,378.15 to CTO's account at CTBC Bank's Hong Kong branch. On March 4, 2005, $7,500,000.00 was wire transferred to a bank account at CTBC's Hong Kong branch in the name of Garrison Colony Asia Investment Limited (the "Garrison"). Garrison was a company registered in the Cayman Islands on December 10, 2003. Its director is listed as Yu-Keung Wong, a Hong Kong resident, who is believed to have acted at Cheng's direction. The Garrison CTBC Hong Kong account was opened on March 20, 2004, with Cheng as the sole signatory until June 30, 2006. Once the

---

restraint or forfeiture order by a foreign court. The legal request in this case is among the first such requests by Taiwan.

$7,500,000.00, was transferred into the Garrison account, several wire transfers were made for the apparent purpose of layering the funds and distancing them from the source, thereby obscuring its origins to the CTO account. On the same day, the $7,500,000.00 in the Garrison account was transferred into three different companies' bank accounts maintained at CTBC Bank's Hong Kong branch, in a series of sequential steps. The $7,500,000.00 was ultimately transferred to an account in the name of Advanced Synchronous Solution Limited ("Advanced Synchronous").

On April 11, 2005, $1,500,012.95 of the $7,500,000 was transferred from the Advance Synchronous account into an account in the name of KGNV Investment II Limited (the "KGNV") in Hong Kong.[4] The same day, that money was transferred from the KGNV account into an account in the name of Chung Chun Company (the "Chung Chun") at the CTBC Bank in Taiwan. Chung Chun was a company registered in Taiwan on May 10, 1999, and the Chairpersons were listed as Cheng and his wife. According to the Taiwan investigation, Chung Chun was wholly owned and controlled by Cheng and his wife, and the Chung Chun account at the CTBC Bank in Taiwan was treated as Cheng's personal account. A former company accountant, Feng-Fu Wu ("Wu"), was also charged in the scheme involving Cheng in Taiwan. Wu testified that he had transferred the $1,500,012.95 from the KGNV account to Cheng's personal account under Cheng's instructions.

Other funds were transferred into Cheng's personal accounts in a similar fashion as described above using Cheng's offshore shell companies' accounts. Some of the funds stolen from CTO's

[4] Newton and Fermion were Cayman Islands companies, registered in 2003. Advanced Synchronous and KGNV were companies registered in British Virgin Islands in 2003 and 2000 respectively. All of the companies had bank accounts at the CTBC Bank's Hong Kong branch, and Cheng was the sole signatory for the accounts during the alleged criminal conduct.

accounts were used to purchase high-end artwork for Cheng's personal art collection. Although the Taiwan investigators are not able to show the direct movement of the stolen funds into the U.S., direct tracing is not required under Taiwan law for confiscation.

The Restraining Orders provide that they apply to all interests of Chuing Zaa Cheng in the assets held in the bank accounts at JPMC by Chiung-Zaa Cheng, DOB January 2, 1964, or CNG investment LLC ("CNG"), and real property at 18 Gramercy Park South, New York, NY. The orders list the following assets from which they request the U.S. authorities to restrain the $14,010,829.02, but states that this is not intended to be an exclusive list: The real estate located at 18 Gramercy Park South, New York, owned by Cheng in the name of CNG. The Restarining order also identify bank accounts at JMPC held by Cheng or CNG, including, but not limited to, the following account numbers: Nos. 477951060, 3011607867 and 477951136.

The condominium residence located at 18 Gramercy Park Condominium, Unit 2, New York, NY is owned and controlled by Cheng. According to title records, this property is owned by CNG and was purchased by CNG on June 18, 2013 for $15,700,000. In the closing documents, Cheng signed for CNG and gave his social security number as its tax ID number. Further establishing Cheng's ownership interest in the property, when CNG purchased the property in 2013, a lawyer representing Cheng wrote a letter stating that their client, Steven Cheng, "owns the controlling interest in CNG Investments LLC." The closing company granted their request to delay the closing based on the documents available to them regarding the ownership and control of CNG. Additionally, CNG has an account at JPMC, for which Cheng is the sole signatory on the CNG account.

Cheng also owns and controls JPMC account numbers 477951060, 3011607867 and 477951136. Account number 477951060 is opened in the name Chuing Zaa Cheng and he is the

sole signatory. Accounts numbered 3011607867 and 477951136 are all opened in the name of CNG. As stated above, Cheng is the sole signatory of the CNG accounts and owns a controlling interest in CNG. He is the sole authorized signatory for the CNG accounts at JMPC.

Finally, there are other Accounts at JPMC in which Cheng's interest could be restrained. For example, JPMC Account Numbers 477939297, 3011602512, 3011607859, 3040718958, 3040725490, 3040725508, 559776708, 559791640, and 559791665. According to JPMC account records, each of these accounts was opened in the name of Steve Chuing Zaa Cheng solely using the same birthdate as the defendant in the Taiwan order. He is the sole signatory over these accounts. In addition, JPMC Account Number 2221678004, in the name of CFII Trust Holding LLC (the "CFII"), is owned and controlled by Cheng. CFII was registered in the state of Delaware. According to the CFII Account Opening Application at JMPC, Cheng owns a 100% interest in the CFII and is the sole authorized signatory for the CFII accounts at JPMC.

The United States seeks an order to restrain Cheng's interest up to $14,010,829.02 and will seek to enforce it against Cheng's interest in the following assets:

1) Any and all funds and assets at JPMC in the name of Steven Cheng aka Steven Chuing Zaa Cheng, or Chuing-Zaa Cheng;

2) Any and all funds and assets at JPMC in account number M21678004, in the name of CFII Trust Holding LLC Account; and

3) Any or all funds on deposit at JPMC representing the interest owned by Cheng in CNG Investment LLC.

4) If less than the full amount of the restraining orders can be restrained at JPMC, the United States seeks authority to be able to record a lien for the remaining balance against the title of the real property located 18 Gramercy Park Condominium, unit 2, New York, NY.

## IV. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an

enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)).[5] Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) of Title 18 do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of

[5] The statute authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i) (2012).

foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or his authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. *See* Exhibit B, DOJ Order No. 2820-2006. The AAG's determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## V. DISCUSSION

### A. The Taiwan Restraining Order Meets the Requirements For Enforcement Under §2467(d)(3)(A)

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is any reason to believe the foreign order was obtained by fraud, *id.*[6] The Taiwan restraining order meets the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry of the proposed U.S. restraining order is both necessary and appropriate to preserve the property

---

[6] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

for eventual forfeiture in Taiwan.

1. Agreement on Forfeiture Assistance

First, the United States and Taiwan are parties to a Mutual Legal Assistance Agreement that entered into force on March 26, 2002. *See*, fn 1. Under this Agreement, the United States has an obligation to assist Taiwan in forfeiture or confiscation related matters, including the restraint of criminal proceeds and instrumentalities of offenses. *Id.,* at Article 17.[7] Accordingly, the first criterion for enforcement is met because the United States and Taiwan are parties to an international agreement authorizing forfeiture assistance.

2. Attorney General Certification

Second, the Taiwan Restraining Order was certified by the Assistant Attorney General on March 24, 2017. The AAAG, in certifying the order, acknowledged that he has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the order came, and has concluded that enforcement of the foreign restraining order pursuant to 28 U.S.C. § 2467 is "in the interest of justice." *See* Exhibit A, AAAG Certification and Taiwan Restraining Order. Thus, the second criterion for enforcement is met.

---

[7] 22 USC § 3305 authorizes the U.S. to enter into this agreement through the American Institute in Taiwan with the Taipei Economic and Cultural Office for the benefit of the governments of Taiwan and the United States. The Department of State interprets this agreement as equivalent to a binding formal international agreement under 28 USC §2467(a). The State Department's interpretation is entitled to great deference. See, e.g., *Abbott v. Abbott*, 560 U.S. 1, 15 (2010) ("It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'") (citation omitted); *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight."); *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 569 (9th Cir. 2011); (noting deference to the Executive Branch when interpreting the U.S.-Russia MLAT); *United States v. Trustees of Boston Coll.*, 831 F. Supp. 2d 435, 446 (D. Mass. 2011) (deferring to the State Department's analysis of the U.S.-U.K. MLAT), *rev'd in part on other grounds*, 718 F.3d 13 (1st Cir. 2013).

3. Due Process

Third, the Restraining Orders issued by the Taiwan court were issued consistent with due process. Article 38-1 of the Taiwan Criminal Code provides that "proceeds of crime, if belonging to the offender, shall be confiscated, unless otherwise stipulated by other laws." Further the law provides that "whenever confiscation, in part or whole, of such property … cannot be performed or said confiscation would not be suitable, then a demand for payment of equal value shall be made in its stead." Article 38-1 (paragraph 3) of the Taiwan Criminal Code. Thus, where criminal proceeds are no longer available, Taiwan law authorizes confiscation of substitute assets of corresponding value equal to criminal proceeds.

Article 38-1 paragraph 3 also specifically authorizes the pre-trial restraint of substitute assets up to the value of the loss. According to the Taiwan investigation, only $70,000 in property owned by Cheng was found in Taiwan. For this reason, the Taipei District Court issued a restraining order against Cheng's assets in the United States not to exceed $14,010,829.02.

Taiwan law provides due process protections for property owners and third-parties who might be impacted by the Restraining Order. Pursuant to Articles 142-1, 404, and 406 of the Taiwan Criminal Code, anyone served with a Taiwan restraining order may assert a claim challenging the court's restraining order, and appeal from an adverse ruling. Moreover, pursuant to Article 416 of the Taiwan Criminal Code, anyone who is affected by the measures associated with the restraining order may "file a motion for dismissal or change" with the issuing court in Taiwan. If not served, the Restraining Orders expire within six months after entry which is on or after approximately April 5, 2017.

4. Subject Matter Jurisdiction

Fourth, Article 5 of the Taiwan Criminal Code provides for jurisdiction over the criminal

and confiscation proceedings by the court where the crime occurred. Taiwan authorities have represented that the Taipei District Court has subject matter jurisdiction over the criminal offenses and forfeiture of the assets in question and is the proper authority to issue the Restraining Order in this matter because Cheng and his relatives operated the businesses from which they stole the funds from their Taipei headquarters. Additionally, co-conspirator Jeffrey Koo was tried in the same court for related offenses. His convictions have been affirmed on appeal. If there was a jurisdictional issue, it would likely have been raised. We are aware of no reasons to doubt the Taipei Court's jurisdiction.

5. Absence of Fraud

Fifth, the United States has no reason to believe that the Taiwan Restraining Orders were obtained by fraud. The prior prosecutions of Cheng's co-conspirators which have already been challenged and sustained on appeal provide some confidence that the charges are based on evidence and the law. Accordingly, AAG certification of the restraining order from the Taiwan court for enforcement and registration in the United States against Cheng's assets, as described in this memorandum and the attached Restraining Orders, is in the interest of justice.

B. Dual Forfeitability Is Satisfied

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual

forfeitability). In the published decisions of this Court, one judge *has* applied the requirement without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States in the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is a requirement for enforcement of a foreign restraining order and deciding that the United States satisfied it), *with In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17, 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture . . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case").

Dual forfeitability, nevertheless, is satisfied here because Cheng's underlying criminal conduct would be chargeable under various U.S. criminal laws giving rise to forfeiture under U.S. law. Cheng has been charged with violations of the Taiwan Financial Holding Company Act Article 57, which criminalizes "a responsible person or staff member of a Financial Holding Company who violates his/her duty with the intent to gain illegal benefit for himself/herself or a third party and damages the Financial Holding Company's assets or other interests." In addition, Cheng has been charged with violations of the Taiwan Security and Exchange Article 171, which makes it an offense for "a director, supervisor, managerial officer or employee of an issuer" to "directly or indirectly, cause the company to conduct transactions to its disadvantage" or to "procure a benefit for himself/herself or for a third person, acts contrary to his/her duties or misappropriates company assets." Finally, Cheng has been charged with violations of the Taiwan Money Laundering Control Act Article 2, which makes it a crime for anyone who

"knowingly disguises or conceals the property or property interest obtained from a serious crime committed by themselves."

If Cheng's alleged criminal conduct had been committed in the United States, his conduct would arguably violate at least the following federal statutes: 18 U.S.C. § 656 and § 657 (theft or embezzlement by financial institution officers or employees); 18 U.S.C. §§ 1956, 1957 (money laundering); 18 U.S.C. §1343 (wire fraud); and 18 U.S.C. § 2314 (interstate transportation of stolen property); among other statutes. The U.S. offenses listed above all give rise to forfeiture.[8]

C. This Court Should Act To Enforce The Taiwan Restraining Order By Executing A Seizure Order Pursuant To § 983(j)(1).

The October 5, 2016, restraining order entered by the Taiwan court reflects the intention of Taiwan to seek the confiscation of his assets as a result of Cheng's criminal conviction. Thus, the United States, acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order or judgment against Cheng's assets up to the amount of $14,010.829.02.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the Taiwan Restraining order—to "preserve the availability of property . . . subject to forfeiture" for the duration of the Taiwan confiscation proceeding. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign

---

[8] *See* 18 U.S.C. § 982(a)(2)(A) (criminal forfeiture of any property which constitutes, or is derived from, proceeds traceable to violations of §§ 656, 657); 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes, or is derived from, proceeds traceable to violations of §§ 656, 657); 18 U.S.C. § 982 (a)(1)(A) (criminal forfeiture of any property involved in §§ 1956, 1957); 18 U.S.C. 981(a)(1)(A) (civil forfeiture of any property involved in a transaction or attempted transaction in violation of §§ 1956, 1957); 18 U.S.C. §§ 981(a)(1)(C),1956(c)(7)(A) and 1961(1)(§§ 2314 and 2315 of Title 18 relating to interstate transportation of stolen property); *see also* 28 U.S.C. § 2461 (modes of recovery for offenses authorizing criminal or civil forfeiture).

forfeiture proceedings). As such, this Court should recognize the Taiwan court's order and enforce it according to its terms by restraining Cheng's U.S.-based assets up to the amount of $14,010,829.02.

## VI. CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enforce the attached Taiwan restraining orders, consistent with U.S. obligations under the bilateral agreement, by entering the attached proposed restraining order pursuant to this Court's authority under 28 U.S.C. §§ 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1)(A). The United States will promptly provide Cheng with notice of this proceeding and a copy of the both U.S. and Taiwan restraining orders.

Dated this 27th day of March, 2017.

DEBORAH J. CONNOR, Acting Chief
Money Laundering and Asset Recovery Section

By: ______________________________
MARY K. BUTLER
Chief, International Unit
Mary.Butler@usdoj.gov
ADDY J. DE KLUIVER
Senior Legal Counsel
Jack.dekluiver@usdoj.gov
JENNIFER WALLIS
Trial Attorney, International Unit
Jennifer.Wallis@usdoj.gov
U.S. Department of Justice
Criminal Division
Money Laundering and Asset Recovery Section
United States Department of Justice
1400 New York Avenue, N.W., 10100
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Applicant
UNITED STATES OF AMERICA

Exhibit A

Assistant Attorney General Certification and Taiwan Restraining Orders

U.S. **Department of Justice**

Criminal Division

*Washington, D.C. 20530*

**ASSISTANT ATTORNEY GENERAL DECISION**

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii), and the Attorney General's delegation of authority to the Assistant Attorney General for the Criminal Division, Number 2820-2006, I hereby find that it is in the interest of justice to CERTIFY for enforcement the attached restraining orders issued by the Taiwan Taipei District Court in Case No. 20 of 105 (2016) on October 5 and 7, 2016.

**Kenneth A. Blanco**
**Acting Assistant Attorney General**
**Criminal Division**

3·24·17
**Date**

Criminal Decision - Taipei District Court, Taiwan

Year 2016 Sheng Kou Zi No. 20

Applicant: Prosecutor, Supreme Prosecutors Office (Special Investigation Division)

Crime suspect: Chuing-Zaa Cheng, male, 52 years old (born on Jan 2nd, 1964)
Unified ID card No: No. E12124164
Address: No. 3927, Quai Ridge Road Lafayatt, 94549 California U.S.A[1]

Upon the application filed by the prosecutor to seize the crime suspect's property (Year 2016 Shen Kou Zi No. 1) due to the above-listed defendant's involvement in cases related to the Securities And Exchange Act and others, this court hereby issues a decision as follows:

Main body of the decision:

The seizure of the property owned by the crime suspect Chuing-Zaa Cheng, as shown in the appendix, is granted.

Grounds for the ruling:

1. All the property to be confiscated shall be seized accordingly; in order to guarantee recovery, the property of the crime suspect, defendant or a third person shall be seized if necessary, as clearly stated in Items 1 and 2, Article 133 of the Code of Criminal Procedure Law. In addition, if, during the course of the investigation, the prosecutor finds it necessary to apply for a decision regarding the seizure, the relevant written application shall be created as provided in Items 1 and 2, Section 3, Article 133-1, the grounds for seizure shall be stated therein, and the application shall be submitted to the court for adjudication; if the judiciary police find it necessary to seize the property, a request shall be made to the prosecutor for permission as provided in the abovementioned regulation as well, and the application shall be submitted to the court for issuing a decision on the seizure, as clearly stated in Section 1 and 2, Article 133-2.

2. Brief content of the application: the suspect in this case, Chuing-Zaa Cheng, has been prosecuted for violations of the Securities And Exchange Act and others, and the applicant considers it to be necessary to seize the property owned by Chuing-Zaa Cheng as shown in the appendix, so as to guarantee the recovery (due to the investigation secrecy, the court shall not reveal details in this decision; please see detailed relevant evidence in the appendix). Upon verification of the abovementioned evidence, the court holds that the application is justified, thus approves the seizure as in the main text according to Section 1, Article 133-1 of the Code of Criminal Procedure.

3. The seizure ruling shall take effect from 8 am on Oct 6th, 2016 to 5 pm on Apr 5th, 2017, and shall not be executed if it exceeds the time limit.

Oct 5th, 2016

Judge of the 15th Criminal Court: Jialin Wu

This authentic copy is verified to be identical with the original copy.

If [the defendant] refuses to accept this judgement, [the defendant] shall file an appeal with this court within 5 days after [this ruling] is being served.

[1] [sic – presumably 3927 Quail Ridge Road, Lafayette, California, 94549 USA]

Clerk: Pinjie Cheng

Oct 5th, 2016

| Appendix | |
|---|---|
| No. | Item |
| 1 | The real property located at 18 Gramercy Park South, New York, owned by Chuing-Zaa Chengin the name of CNG Investment LLC (hereinafter referred to as CNG company). |
| 2 | The balances of bank accounts in the name of Chuing-Zaa Cheng and CNG Company at JP Morgan Chase & Co., including but not limited to the following accounts: No. 477951060, 3011607867 and 477951136. |

[3 square seals, top to bottom, left to right]
1. Court clerk: Pinjie Cheng
2. Taipei District Court, Taiwan
3. Court clerk: Pinjie Cheng

[2 characters on right lower corner of page 1]
lin gu

臺灣士林地方法院所屬民間公證人林智育事務所
The Lin Chih-Yu Notary Public Office, Taiwan Shihlin District Court, Republic of China
103 臺北市大同區承德路1段48號9樓之1 TEL：886-2-2555-1959 FAX：886-2-2550-9680
9F.-1, No.48, Sec. 1, Chengde Rd., Datong Dist., Taipei City 103, Taiwan (R.O.C.)

正本
ORIGINAL

I certify that this translation is a true and correct English version of the attached original to the best of my knowledge and belief.

Translator: 徐嘉珮

Date:2016.12.19

茲保證後附文件之英文譯本，確係本人就中文之原本，所為真正且忠實之翻譯，盡本人所能，力求與原文文義相符。

譯　　者：徐嘉珮

中華民國 105 年 12 月 19 日

案號：中華民國105年度士院民認智字第10500101442號
日期：中華民國105年12月19日
本文件翻譯人之簽名或蓋章在臺灣士林地方法院所屬民間公證人林智育事務所認證。本翻譯本文義核與連綴之原文文書尚屬相符。公證人：林智育

Case No.: Shih Yuan Min Ren Chih Tz No.10500101442
Date:2016.12.19
Attested at The Lin Chih-Yu Notary Public Office, Taiwan Shihlin District Court, R.O.C., that the signature(s)/seal(s) of translator in this document is/are authentic. The translated version is hereby certified to be true and correct to the meaning of the attached original.

Notary Public

Lin Chih-Yu

公證人 林智育

# Criminal Decision - Taipei District Court, Taiwan

Year 2016 Sheng Kou Zi No. 20

Applicant: Prosecutor, Supreme Prosecutors Office (Special Investigation Division)

Crime suspect: Chuing-Zaa Cheng, male, 52 years old (born on Jan 2nd, 1964)
Unified ID card No: No. E12124164
Address: No. 3927, Quai Ridge Road Lafayatt, 94549 California U.S.A[1]

In the original decision issued by this court dated October 5th 2016 with regard to the above-listed defendant's involvement in cases related to the Securities And Exchange Act and others, an error was found and shall be corrected as follows:

Main body of the decision:

Of the original decision abovementioned the main body in every copy is hereby corrected as: " The seizure of the property owned by the crime suspect Chuing-Zaa Cheng, as shown in the appendix, in the scope of which the value equals to USD 14,010,829.02, is granted."

Grounds for the ruling:

1. According to the Judicial Yuan Interpretation No. 43, if a mistake in the decision is clearly a case of clerical error which should impact neither the facts of the case nor the gist of the decision, with reference to Article 232 of the Code of Civil Procedure, corrections of such decision may be made by having the original court to issue a correctional decision.

2. Since the error in the main body of the original decision abovementioned with regard to the scope of seizure was clearly a case of clerical error, which should not impact the gist thereof; it shall hence be corrected as the main body of this correctional decision.

3. The court thus renders this correctional decision according to Article 220 of the Code of Criminal Procedure.

Oct 7th, 2016

Judge of the 15th Criminal Court: Jialin Wu

This copy is verified to be identical with the original copy.

If [the defendant] refuses to accept this judgment, [the defendant] shall file an appeal with this court within 5 days after [this ruling] is being served.

Clerk: Pinjie Cheng

Oct 7th, 2016

[3 square seals, top to bottom, left to right]
1. Court clerk: Pinjie Cheng
2. Taipei District Court, Taiwan
3. Court clerk: Pinjie Cheng

---

[1] [sic – presumably 3927 Quail Ridge Road, Lafayette, California, 94549 USA]

[2 characters on right lower corner of page 1]
lin gu

臺灣士林地方法院所屬民間公證人林智育事務所
The Lin Chih-Yu Notary Public Office, Taiwan Shihlin District Court, Republic of China
103 臺北市大同區承德路 1 段 48 號 9 樓之 1 TEL：886-2-2555-1959 FAX：886-2-2550-9680
9F.-1, No.48, Sec. 1, Chengde Rd., Datong Dist., Taipei City 103, Taiwan (R.O.C.)

正本
ORIGINAL

I certify that this translation is a true and correct English version of the attached original to the best of my knowledge and belief.

Translator: 徐嘉炯

Date:2016.12.19

茲保證後附文件之英文譯本，確係本人就中文之原本，所為真正且忠實之翻譯，盡本人所能，力求與原文文義相符。

譯　者：徐嘉炯

中華民國 105 年 12 月 19 日

案號：中華民國 105 年度士院民認智字第 10500101441 號
日期：中華民國 105 年 12 月 19 日
本文件翻譯人之簽名或蓋章在臺灣士林地方法院所屬民間公證人林智育事務所認證。本翻譯本文義核與連綴之原文文書尚屬相符。公證人：林智育

Case No.: Shih Yuan Min Ren Chih Tz No.10500101441
Date:2016.12.19
Attested at The Lin Chih-Yu Notary Public Office, Taiwan Shihlin District Court, R.O.C., that the signature(s)/seal(s) of translator in this document is/are authentic. The translated version is hereby certified to be true and correct to the meaning of the attached original.

Notary Public

Lin Chih-Yu

公證人
林智育

# 臺灣臺北地方法院刑事裁定

105年度聲扣字第20號

聲　請　人　最高法院檢察署（特別偵查組）檢察官
犯罪嫌疑人　陳俊哲　男　52歲（民國53年1月2日生）
身分證統一編號：E12124164號
住No. 3927. Quai Ridge Road Lafayatt
94549 California U.S.A

上列被告因證券交易法等案件，經檢察官聲請扣押犯罪嫌疑人之財產（105年度聲扣字第1號），本院裁定如下：

主　文

犯罪嫌疑人陳俊哲所有如附件所示財產，准予扣押。

書記官
陳品潔

理　由

一、按得沒收之物，得扣押之；為保全追徵，必要時得酌量扣押犯罪嫌疑人、被告或第三人之財產，刑事訴訟法第133 條第1項、第2項定有明文。又偵查中檢察官認有聲請扣押裁定之必要時，應以書面記載同法第133條之1第3項第1款、第2款之事項，並敘述理由，聲請該管法院裁定；司法警察官認有為扣押之必要時，亦得依上開規定，報請檢察官許可後，向該管法院聲請核發扣押裁定，同法第133條之2第1項、第2項亦有明文。

二、聲請意旨略以：本件犯罪嫌疑人陳俊哲因違反證券交易法等等案件，聲請人認有扣押其等所有如附件所示財產，以保全追徵之必要等語（因涉及偵查不公開，本院不於裁定中詳述，詳參卷附相關事證）。本院經核上開卷證，認所請尚非無理由，爰依刑事訴訟法第133條之1第1項之規定，裁定如主文。

三、本扣押裁定執行之有效期間自民國105年10月6日上午8時至106年4月5日下午5時止，逾期不得執行。

中　華　民　國　105　年　10　月　5　日

刑事第十五庭　法　官　吳佳霖

以上正本證明與原本無異。

如不服本裁定，應於送達後5日內，向本院提出抗告狀。

書記官 陳品潔

中 華 民 國 105 年 10 月 5 日

附表

| 編號 | 項目 |
| --- | --- |
| 1 | 陳俊哲以CNG Investment LLC（下稱CNG公司）名義持有位於18 Gramercy Park South, New York之不動產。 |
| 2 | 陳俊哲、CNG公司名下在美國紐約州摩根大通銀行（JP Morgan Chase & Co.）所開設，包含但不限於下列帳號之帳戶餘額：帳號477951060、3011607867、477951136 |

# 臺灣臺北地方法院刑事裁定

105年度聲扣字第20號

聲　請　人　最高法院檢察署（特別偵查組）檢察官

犯罪嫌疑人　陳俊哲　男　52歲（民國53年1月2日生）

身分證統一編號：E12124164號

住No. 3927. Quai Ridge Road Lafayatt

94549 California U.S.A

上列犯罪嫌疑人因違反證券交易法等案件，本院於民國105年10月5日所為裁定之原本及其正本有誤寫，應裁定更正如下：

主　文

原裁定之原本及其正本主文欄應更正為：「犯罪嫌疑人陳俊哲所有如附件所示財產，在相當於美金壹仟肆佰零壹萬捌佰貳拾玖點零貳元價值之範圍內，准予扣押」。

書記官 吳芷嫻

理　由

一、按刑事判決文字，顯係誤寫，而不影響於全案情節與判決之本旨者，參照民事訴訟法第232條規定，原審法院得以裁定更正之，業經司法院大法官會議釋字第43號解釋在案。

二、本件原判決之原本及其正本主文欄關於扣押範圍部分，顯係誤寫，且不影響裁定本旨，應更正如主文所示。

三、依刑事訴訟法第220條裁定如主文。

中　華　民　國　105　年　10　月　7　日

刑事第十五庭　法　官　吳佳霖

上正本證明與原本無異。

如不服本裁定，應於裁定送達後5日內向本院提出抗告狀。

書記官　吳芷嫻

書記官 吳芷嫻

中　華　民　國　105　年　10　月　7　日



霖股

Exhibit B

DOJ Order No. 2820-2006

# Office of the Attorney General
Washington, D.C.

ORDER NO. 2820-2006

DELEGATION TO THE ASSISTANT ATTORNEY GENERAL
FOR THE CRIMINAL DIVISION CERTAIN AUTHORITY
RELATED TO FOREIGN FORFEITURE JUDGMENTS

Pursuant to the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 2467, and the civil and criminal forfeiture statutes enforced or administered by the Department of Justice, I hereby delegate to the Assistant Attorney General for the Criminal Division, as my designee, my certification authority under 28 U.S.C. § 2467 with respect to the recognition of foreign forfeiture and confiscation judgments and related orders.

The Assistant Attorney General is authorized to redelegate to any subordinates the authority, functions, or duties vested in the Assistant Attorney General under this order.

5-9-06
Date

Alberto R. Gonzales
Attorney General

INTERNAL ORDER -- NOT PUBLISHED IN F.R.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In Re: ENFORCEMENT OF A RESTRAINING ORDER BY THE TAIPEI DISTRICT COURT, TAIWAN, TO RESTRAIN ANY PROPERTY OWNED OR CONTROLLED BY STEVEN CHENG IN THE UNITED STATES UP TO $14,010,829.02, INCLUDING, BUT NOT LIMITED TO:

ANY AND ALL FUNDS AND ASSETS IN ALL ACCOUNTS IN THE NAME OF STEVEN CHENG HELD AT JP MORGAN CHASE BANK, NEW YORK, NY

ANY AND ALL FUNDS AND ASSETS IN ALL ACCOUNTS IN THE NAME OF CFII TRUST HOLDING LLC HELD AT JP MORGAN CHASE BANK, NEW YORK, NY

ANY OR ALL INTEREST OWNED BY STEVEN CHENG IN CNG INVESTMENT LLC HELD AT JP MORGAN CHASE BANK, NEW YORK, NY

ANY OR ALL INTEREST IN REAL PROPERTY LOCATED AT 18 GRAMARCY PARK SOUTH UNIT 2, NEW YORK, NY

1:17-MC- ____________________

[PROPOSED] **RESTRAINING ORDER**

This matter having come before this Court on the application of the United States of America for a restraining order, pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1), which provides U.S. district courts with jurisdiction to register and enforce foreign restraining orders and take such other action in connection with any property or other interest subject to forfeiture in a foreign proceeding to ensure its availability for forfeiture; and,

IT APPEARING TO THE COURT THAT:

WHEREAS, through the information provided to this Court in the Application by the United States for Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18

U.S.C. §983(j)(1), asking for enforcement of a Taiwan restraining order against all assets owned or controlled by Steven Cheng (aka Chuing-Zaa Cheng, or Steven Chuing-Zaa Cheng) (Steven Cheng), CNG Investment LLC at JP Morgan Chase and all interest in real property located at 18 Gramercy Park South, Unit 2, New York, New York, with a combined value not exceeding $14,010,829.02 U.S. dollars (the "Properties"), the United States has established that:

a. This Court has jurisdiction over the subject matter of this case;

b. Pursuant to 28 U.S.C. §2467 (c)(2)(B), venue is appropriate in the United States District Court for the District of Columbia;

c. The United States and Taiwan are parties to a Mutual Legal Assistance Agreement which that entered into force on March 26, 2002 under which Taiwan has requested U.S. assistance in enforcing the restraining orders that are the subject of this application. *Agreement on Mutual Legal Assistance in Criminal Matters Between the American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the United States*, March 26, 2002;

d. The restraining orders issued by the Taipei District Court, Taiwan, on October 5 and 7, 2016, establish that criminal proceedings are pending in Taiwan against Steven Cheng who is charged with various offenses under the Taiwan Security and Exchange Act, Financial Holding Company Act, and Money Laundering Control Act. Steven Cheng's assets in the United States are subject to forfeiture under Taiwan law;

e. The criminal conduct giving rise to forfeiture under Taiwan law constitutes conduct that would give rise to forfeiture under 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 982(a)(2)(A), or 28 U.S.C. § 2461(c) if committed in the United States;

f. The Attorney General, in the interest of justice, has certified the attached Taiwan restraining orders for enforcement against the captioned assets;

g. The Taiwan restraining orders appear to have been rendered under a system of law compatible with the requirements of due process;

h. The Taipei District Court that entered the restraining order appears to have jurisdiction over the subject matter; and

i. There is no indication that the restraining orders issued by the Taipei District Court in Taiwan were obtained by fraud;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, PURSUANT TO 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. §983(j)(1), THAT:

1. The restraining orders issued by the Taipei District Court, Taiwan, which are attached as Exhibit A, to this order, are hereby registered and enforced with this Court;

2. Steven Cheng's interest in the following properties located in the United States up to the value of $14,010,829.02 U.S. are hereby RESTRAINED:

   1) Any and all funds and assets at JP Morgan Chase in New York (the "JPMC") in the name of Steven Cheng;

   2) Any and all funds and assets at JPMC in account number M21678004, in the name of CFII Trust Holding LLC Account; and

   3) Any or all funds on deposit at JPMC representing the interest owned by Steven Cheng in CNG Investment LLC;

   4) Any or all interest in the real property located 18 Gramercy Park Condominium, unit 2, New York, NY up to the amount $14,010,829.02, minus the total of all funds on deposit in the financial accounts in sub-paragraphs (1), (2) and (3) of this section.

3. All persons, including the above-named Taiwan criminal defendant, his agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and anyone holding any interest in the Properties, be and are hereby ENJOINED AND RESTRAINED from transferring, selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of or removal from the jurisdiction of this Court, without prior approval of this Court upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order or any future Orders entered by this Court;

5. The terms of this Order shall remain in full force and effect until the Taiwan criminal cases are concluded and any forfeiture judgments obtained therein have been presented for enforcement to this Court, or said Properties are sought by Taiwanese authorities to be released; and

6. The United States Department of Justice, Money Laundering and Asset Recovery Section, shall make its best efforts to provide a copy of this Court's Order upon individuals and entities affected by this Order, and to anyone else known to the United States as holding a protected interest in the Properties;

7. The United States Department of Justice, Money Laundering and Asset Recovery Section, may serve a copy of this Order on the affected financial institution by facsimile.

**SO ORDERED.**

Dated:

________________________________________
UNITED STATES DISTRICT JUDGE